**E-FILED**
Tuesday, 23 June, 2015  02:49:38 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| HYE-YOUNG PARK, a/k/a LISA PARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.:15-cv-2136 |
| | ) |
| MICHAL T.HUDSON, individually, | ) Hon. |
| HEIDI JOHNSON, individually, | ) |
| CHARLES SECOLSKY, individually, | ) |
| ROBERT STAKE, individually, | ) |
| and THE BOARD OFTRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, HYE-YOUNG PARK, and by her attorney, M. Dennis Mickunas, and for her Complaint against Defendants MICHAL T. HUDSON, HEIDI JOHNSON, CHARLES SECOLSKY, ROBERT STAKE, and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, alleges as follows:

### Introduction

1.      This lawsuit arises on behalf of Hye-Young Park, a female Korean participant in a University of Illinois sponsored program, as a result of (a) actions and inactions of the defendants that allowed and emboldened Charles Secolsky to engage in acts of sexual misconduct, constitutional infringements, and other tortious behavior, and (b) retaliation by defendants against Hye-Young Park.

**Parties**

2.      Plaintiff, HYE-YOUNG Park, also known as Lisa Park (hereinafter "Park"), is a citizen of the Republic of Korea, is a female of Korean national origin, and was, at all times relevant to this Complaint, a non-immigrant resident of Champaign County, Illinois.  Park is now a permanent resident of the United States.

3.      Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS (hereinafter "University of Illinois") is a body corporate and politic which operates the University of Illinois, including the University of Illinois at Urbana-Champaign (hereinafter "UIUC"), located in Champaign County, Illinois.

4.      Defendant MICHAL T. HUDSON (hereinafter "Hudson") was, at all times relevant to this Complaint, an employee of the University of Illinois, and a resident of Champaign County, Illinois.

5.      Defendant HEIDI JOHNSON (hereinafter "Johnson") was, at all times relevant to this Complaint, an employee of the University of Illinois, and a resident of Champaign County, Illinois.

6.      Defendant CHARLES SECOLSKY (hereinafter "Secolsky") was, at all times relevant to this Complaint, a Visiting Researcher at the University of Illinois, and a resident of Champaign County, Illinois.

7.       Defendant ROBERT STAKE (hereinafter "Stake") was, at all times relevant to this Complaint, a Professor Emeritus of the University of Illinois, and a resident of Champaign County, Illinois.

2

8.      Each of the individual Defendants listed above is sued in his or her individual capacity, and each acted under color of state law while engaging in the actions alleged in this Complaint.

## Jurisdiction and Venue

9.      Jurisdiction lies under 28 U.S.C. §1331 because some of the claims of this action arise under federal law.

10.     Supplemental jurisdiction over the state claims arises under 28 U.S.C. §1367(a).

11.     Venue in the Central District of Illinois, Urbana Division, is appropriate under 28 U.S.C. §1391 because the occurrences complained of took place in Champaign County.

## Facts Applicable to All Counts

12.     At all times relevant to this complaint, the University of Illinois was an educational institution that received federal funding.

13.     At all times relevant to this complaint, Hudson was employed at the UIUC Office of Diversity, Equality and Access (hereinafter "ODEA") with the titles of "Senior Title IX and ADA Specialist" and "Assistant ADA-EEO Coordinator."

14.     At all times relevant to this complaint, Johnson was employed at the UIUC ODEA with the title of "Director."

15.     From 2003 through August, 2013, Park was a graduate student at UIUC, pursuing a Doctor of Philosophy degree in the College of Education.

16.     In July, 2013 Park completed the requirements for a Doctor of Philosophy degree at UIUC, and she was awarded the degree on August, 2013

17.     From October 15, 2013 through September 30, 2014, Park was legally in the United States under an F-1 non-immigrant visa as a participant in the Optional Practical Training (hereinafter "OPT") post-doctoral program sponsored by the University of Illinois.

18.     Prior to 1998 Stake was employed as a professor at UIUC.

19.     Stake retired from UIUC in 1998, and at all times relevant to this complaint, he continued to hold an appointment at UIUC as a "Professor Emeritus."

20.     The Center for Instructional Research and Curriculum Evaluation (hereinafter "CIRCE") is a research center operating under the auspices of the University of Illinois.

21.     At all times relevant to this complaint, CIRCE was housed at the Children's Research Center (hereinafter "CRC") located at 51 Gerty Drive, Champaign, Illinois.

22.     At all times relevant to this complaint Stake was the Director of CIRCE.

23.     Under color of his authority as Director of CIRCE, Stake:

   a.   granted Secolsky the authority to conduct research at UIUC under the auspices of CIRCE;

   b.   granted Secolsky the authority to teach classes at UIUC;

   c.   granted Secolsky the authority to interact with and to assist students at UIUC;

   d.   provided Secolsky with office space and equipment at UIUC; and,

   e.   published on the door to office #190 at CRC, Secolsky's name along with the names of Fatima Cruz, Biljana Fredriksen, Gordon Hoke, Emily Lux, Shameem Rakha, and Bob Stake; all were listed under "circe room 188-190."

24.     On and after September, 2013 Secolsky held himself out as a "visiting scholar" and a "visiting professor" at CIRCE by:

    a.   submitting funding proposals through CIRCE using the title "Visiting Researcher at CIRCE;"

    b.   teaching classes at UIUC;

    c.   assisting UIUC students with research and writing;

    d.   meeting with UIUC students;

    e.   co-authoring scholarly papers with faculty, UIUC students, and former students; and,

    f.   utilizing a room at CRC as his office.

25.      In addition to his affiliation with UIUC, Secolsky operated two closely-held corporations out of his residence.

26.      On several occasions prior to October, 2014, Stake attempted to kiss Park. Each time, Park recoiled and pulled away from Stake.

27.      On October 14, 2014, Stake suddenly kissed Park on the lips, then abruptly left the restaurant where they had dined.

28.      On information and belief Stake asked Secolsky to assist Park with her writing.

29.      Secolsky offered to employ Park as an Operations Research Analyst for a period of three years. Said employment would have supported Park's efforts to obtain an H1B visa.

30.      Secolsky made numerous harassing telephone calls to Park beginning in December 2013, including repeatedly telephoning her while he stood outside her apartment window.

31.      On January 24, 2014, at Secolsky's business-residence, after they had completed work on a CIRCE grant proposal:

    a.   Secolsky asked Park to watch a movie;

b.  When Park said that it was late and she had to leave, Secolsky said it would take just 15 minutes.

c.  When Park asked what the movie was about and why she should watch, Secolsky told Park that she needed to become more acquainted with "American culture."

d.  Park then agreed to stay for just 15 minutes.

e.  Secolsky startled Park by showing her a sexually explicit video.

f.  When Park questioned why Secolsky would show her such a video, Secolsky responded that "Asian women like white men."

g.  When Park attempted to leave, Secolsky stood in front of the door, extended his arms and blocked her exit, telling her not to leave.

h.  Secolsky grabbed Park's arm, preventing her from leaving.

i.  Park protested, "I'll talk to Dr. Stake" whereupon Secolsky, fell to his knees, begged Park to forgive the incident, and apologized, explaining that his mother had died early, and that he had been a foster child.  Park broke away and exclaimed, "Please don't do that!"

32.     In numerous telephone calls Secolsky made sexually charged remarks to Park, including:

a.  that they should go dancing; and,

b.  that they should celebrate Valentine's Day together.

33.     In March 2014, in his home office, Secolsky assaulted Park with talk of sexual exploits both with his girlfriend and with a prostitute.  Park ran from the office exclaiming, "I do NOT want to hear this; I do NOT want to know this, PLEASE!"

34.     On several occasions, Secolsky

a.   spoke to Park about "blowjobs;"

b.   bragged of his sexual exploits;

c.   stated that he wants children, and asked Park if she can still have children; and,

d.   attempted to grope Park.

35.    At all times, Park resisted Secolsky's advances, refused his requests and recoiled from his attempted groping.

36.    In May, 2014, Secolsky related to Park that an immigration attorney named Nicolas Munday told him that marriage was the only way for Park to receive a Green Card.  Secolsky told Park that she should live with him and that they should become romantically involved.  Park responded "Never!  Even if you give me a mountain of diamonds.  I love my husband."

37.    On June 2, 2014, Park contacted Stake and asked for a meeting to discuss Secolsky.

38.    On June 5, 2014 Secolsky begged Park not to go further with her complaints, and promised her that he would take care of her visa status.

39.    On June 21, 2014, Park met with Stake at a local restaurant.

a.   Park complained of Secolsky's sexual misconduct and said she was considering legal action.

b.   Stake informed Park that:

i.   Secolsky was not associated with CIRCE.

ii.   Secolsky was neither employed by nor affiliated with UIUC.

iii.   Secolsky was a visiting scholar.

iv.   Any legal action by Park would "100% fail."

c.   After a few minutes of discussion, Stake told Park that he had only five minutes remaining to meet with her.

7

    d.  Park became upset at Stake's attitude, and said that he should "just leave."

    e.  Stake left, saying, "Sorry I can't help."

40.    On June 22, 2014 Park sent email to Stake reminding him that he had attempted to kiss her numerous times, and succeeded in kissing her on the lips on one occasion.

41.    Prior to June 23, 2014, Secolsky had retained immigration attorney Susan Henner to process Park's H1B visa application.

42.    June 23, 2014 attorney Susan Henner sent email to Secolsky (cc'd to Park ) in which:

    a.  Henner expressed confusion concerning her representation;

    b.  Henner expressed dismay that Secolsky had mentioned "extortion" in a telephone call to her associate;

    c.  Henner explained emphatically that Park is not legally permitted to pay for any of the expenses associated with the visa application; and,

    d.  Henner demanded that she be advised as to what was going on.

43.    On June 25, 2014 Secolsky left voicemail for Park, stating he wanted to agree to terms of employment.

44.    On June 25 and June 26, 2014

    a.  Park visited the Women's Resource Center to lodge a formal complaint regarding Secolsky's treatment of her.

    b.  Personnel at the Women's Resource Center referred Park to the ODEA.

    c.  Park visited the ODEA to lodge her complaint.

    d.  At the ODEA Park spoke with Hudson, and provided Hudson with evidence of her F1 OPT employment status.

     e.   Hudson gave Park a copy of document describing policy and procedures for addressing discrimination and harassment at UIUC, as well as a form to fill out to request "informal resolution."

45.    On June 30, 2014 Secolsky sent email to attorney Susan Henner in which:

     a.   Secolsky promised to fulfill his promise to pay for Park's visa application.

     b.   Secolsky stated that Park was not extorting him.

     c.   Secolsky stated that both he and Park wanted only a professional relationship.

     d.   Secolsky stated that Park has never wanted a relationship with him, and that she loves her husband.

     e.   Secolsky promised to send the remaining fee to attorney Henner.

46.    On July 1, 2014 Park met with Hudson.  Hudson stated that ODEA would not be able to assist Park in her complaint against Secolsky because Secolsky was neither officially affiliated with, nor employed by UIUC.

47.    On July 9, 2014 Park sent email to Hudson asking what further assistance ODEA might provide.

48.    On July 16, 2014, Hudson sent email to Park stating, "I can certainly meet with the Department, and potentially recommend that they discontinue consulting services with/from Selcosky [sic].  Now that you have put our office on notice, I have an obligation to follow up on this matter."

49.    Following Hudson's July 16, 2014 email, Park attempted unsuccessfully to meet with Hudson's supervisor.

50.     On July 30, 2014, after continued harassment by Secolsky, Park sent email to Hudson asking, "[I]s there anything your office can do about … the issues I have raised …is there anything your office might recommend or advise[?]"

51.     On approximately August 4, 2014, ODEA personnel met with Stake concerning Park's accusations.

52.     On approximately August 5, 2014, ODEA personnel met with Secolsky concerning Park's accusations.

53.     On approximately August 5, 2015 Secolsky

    a.  informed Park that Stake was angry at having been questioned by ODEA;

    b.  told Park that Stake was refusing to speak to him; and,

    c.  told Park that he (Secolsky) was very unhappy with her complaint, stating, "I lost my reputation… I lost everything … They know everything."

54.     On August 5, 2014:

    a.  Attorney Susan Henner sent email to Secolsky (cc'd to Park) verifying that Secolsky had withdrawn his request to pursue "premium processing" of Park's H1B visa, and that Henner should tear up the check Secolsky had sent her.

    b.  In a subsequent email, Henner advised that the process would "now take 3 plus months to complete" and that Park could not begin work until the case was approved.

    c.  Secolsky responded with email to Henner stating "Please hold offf [sic] on any processing until I speak to my attorney.  **NO PROCESSING AT ALL UNTILI** [sic] **GIVE YOU THE GREEN LIGHT**." [Emphasis in the original.]

55.     On August 7, 2014:

   a.   Park sent email to Hudson informing her of Secolsky's retaliation.

   b.   Hudson responded in email, stating "I have met with Dr. Robert Stake, and my understanding is that neither you nor Mr. Secolsky have any direct employment or current affiliation with the University of Illinois."

56.     On August 14, 2014, Juli Misa, Director of UIUC International Student and Scholar Services, sent email to Hudson stating:

   "Lisa is currently in F-1 nonimmigrant status through the University of Illinois, Urbana-Champaign.  She is authorized for one year of post-completion Optional Practical Training (OPT) based on having finished her doctoral degree here.  I understand that she has been working with Professor Nancy Abelmann during her OPT, but on an unpaid basis.  Unpaid activities are allowed during OPT, as long as those activities are directly related to the student's field of study."

57.     On August 15, 2014, Professor Nancy Abelmann sent email to Park stating, "I am no longer willing to support your OPT because I am technically on academic leave."

58.     On August 22, 2014:

   a.   Park met with Associate Chancellor Reginald Alston and reiterated her complaints.

   b.   Chancellor Alston stated that ODEA had informed him that Park was neither employed by nor affiliated with the University of Illinois.

   c.   Alston suggested that Park meet with Johnson.

59.     On October 1, 2014 Park met with Johnson.

60.     On October 21, 2014 Johnson provided Park with a one-page report of Park's complaint.  The report contained a number of factual errors.

61.     On October 26, 2014, Park sent email to Johnson and Associate Chancellor Menah Pratt-Clarke (cc'd to Chancellor Phyllis Wise and Associate Chancellor Reginald Alston) imploring that ODEA take some action on her complaint.

62.     On October 27, 2014, Johnson emailed Park asking for additional information.  Park provided the information that same day.

63.     On November 18, 2014, Park met again with Johnson.

   a.   Park pointed out errors in the October 21 report.

   b.   Johnson told Park that Secolsky was neither employed by nor affiliated with UIUC, and that ODEA could do nothing for her.

   c.   Johnson refused to reveal the results of her investigation, citing privacy concerns.

   d.   Johnson asked Park what she was seeking from ODEA.

   e.   Park responded that she was seeking an apology, a corrected report of the incidents, compensation, and staff training at ODEA regarding the issues raised.

64.     On September 16, 2014, Secolsky submitted a revision of a paper co-authored with Park, while removing Park's name as a co-author.

65.     Park became upset when she discovered that she had been deleted as a co-author.

66.     On November 19, 2014, Secolsky sent email to Park offering to pay her $1,300, "no tax" for his "breach of contract."

## COUNT I.
## Battery
## (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count I against the Defendant CHARLES SECOLSKY as follows:

67.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

68.     When on January 24, 2014, Secolsky grabbed Park's arm, he did so:

    a.  with intent to make physical contact of an insulting or provoking nature with Park;

    b.  without legal justification; and,

    c.  without Park's consent.

69.     Then and there Secolsky was guilty of having committed a battery against Park.

70.     Secolsky's battery of Park:

    a.  was done with deliberate violence and oppression;

    b.  was done with complete disregard for and total indifference to the safety and well-being of Park; and,

    c.  was part of a pattern of ongoing and escalating misconduct.

71.     Secolsky's battery of Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive

13

damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT II.
### Assault
### (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count II against the Defendant CHARLES SECOLSKY as follows:

72. Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

73. From December 2013 through July 2014, Secolsky made numerous threatening advances upon Park, including exposing Park to a sexually explicit video, and making numerous abusive and threatening statements both in person and in telephone calls.

74. Secolsky's conduct placed Park in reasonable apprehension of receiving a battery.

75. Secolsky intended that his conduct place Park in reasonable apprehension of receiving a battery.

76. Secolsky's conduct was without lawful authority.

77. Then and there Secolsky was guilty of having committed assaults against Park.

78. Secolsky's assaults of Park:

   a. were done with deliberate oppression;

   b. were done with complete disregard for and total indifference to the safety and well-being of Park; and,

   c. were part of a pattern of ongoing and escalating misconduct.

79. Secolsky's assaults against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT III.
## Illinois Hate Crime, 720 ILCS 5/12-7.1
## (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count III against the Defendant CHARLES SECOLSKY as follows:

80.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

81.     The Illinois Criminal Code states, in pertinent part:

> "A person commits harassment by telephone when he or she uses telephone communication for any of the following purposes:
>     (1) Making any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent with an intent to offend;
>     (2) Making a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number;
>     (3) Making or causing the telephone of another repeatedly to ring, with intent to harass any person at the called number;
>     (4) Making repeated telephone calls, during which conversation ensues, solely to harass any person at the called number."
>
>                                         720 ILCS 5/26.5-2.

82.     As alleged above, Secolsky made numerous telephone calls to Park in which he made comments, requests, suggestions and proposals which were lewd and indecent with an intent to offend and harass Park.

83.     As a result of said telephone calls, Secolsky committed harassment by telephone against Park.

15

84.     The Illinois Criminal Code further states, in pertinent part:

"A person commits a hate crime when, by virtue of the actual or perceived … gender ... or national origin of another individual … regardless of the existence of any other motivating factor or factors, he commits assault, battery,...[or] harassment by telephone[.]"     720 ILCS 5/12-7.1(a).

85.     Secolsky's harassment by telephone against Park, as well as his battery and assaults against Park, as alleged in Counts I and II above,  were hate crimes in that:

    a.  They were motivated in whole or in part by Park's gender; and,

    b.  They were motivated in whole or in part by Park's national origin.

86.     720 ILCS 5/12-7.1 allows Park a private right of action against Secolsky for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

87.     Secolsky's hate crimes against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT IV.
## Illinois Gender-Related Violence, 740 ILCS 82/ *et seq.*
## (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count IV against the Defendant CHARLES SECOLSKY as follows:

88.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

16

89.     The Illinois Gender Violence Act states, in pertinent part:

"'[G]ender-related violence', which is a form of sex discrimination, means the following:
        (1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.
 …
        (3) A threat of an act described in item (1) … causing a realistic apprehension that the originator of the threat will commit the act."

                                                               740 ILCS 82/5

90.     Secolsky's battery and assaults against Park, as alleged in Counts I and II, constitute gender-related violence in that they were motivated in whole or in part by Park's sex.

91.     740 ILCS 82/10 allows Park a private right of action against Secolsky for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

92.     Secolsky's acts of gender-related violence against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT V.
## False Imprisonment
## (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count V against the Defendant CHARLES SECOLSKY as follows:

93.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

94.     When on January 24, 2014, Secolsky stood in front of the door to his residence, extended his arms and blocked Park's exit, telling her not to leave, he intended to restrain Park.

95.     Park could not freely leave Secolsky's residence because the door that Secolsky was blocking was the only exit from the residence.

96.     When Park attempted to leave Secolsky's residence, and when Secolsky grabbed Park's arm, Secolsky further intended to restrain Park.

97.     Secolsky's restraint of Park:

    a.   was not legally justified;

    b.   was done with deliberate violence and oppression;

    c.   was done with complete disregard for and total indifference to the safety and well-being of Park; and,

    d.   was part of a pattern of ongoing and escalating misconduct.

98.     As a result of his restraint of Park, Secolsky was then and there guilty of having committed false imprisonment against Park.

99.     Secolsky's false imprisonment of Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

**COUNT VI.**
**Retaliation, 775 ILCS 5 *et seq.***
**(Park v. Secolsky)**

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count VI against the Defendant CHARLES SECOLSKY as follows:

100.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

101.    The Illinois Human Rights Act states, in pertinent part:

> "It is a civil rights violation for a person … to … [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act[.]"
> 775 ILCS 5/6-101(A).

102.    Secolsky's misconduct included:

a.   racial discrimination;

b.   sexual discrimination;

c.   sexual harassment; and,

d.   creation of a hostile work environment.

103.    Following Park's resistance to Secolsky's misconduct, and following Park's threat to "tell Dr. Stake" about the misconduct, and following Park's complaints to the ODEA about Secolsky's misconduct, Secolsky retaliated against Park by

    a.   interfering with Park's application for an H1B visa and permanent residency;

    b.   reneging on his promise to employ Park; and,

    c.   removing Park's name as co-author of a scholarly paper.

104.    775 ILCS 5/10-102 allows Park a private right of action against Secolsky for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

105.    Secolsky's retaliation against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT VII.
## Retaliatory Discharge, 42 U.S.C. § 1981
## (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count VII against the Defendant CHARLES SECOLSKY as follows:

106.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

107.    Secolsky's comments to Park about white men and Asian women constituted racial discrimination.

108.    The United States Code states, in pertinent part,

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts …, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981.

109.    Secolsky's offer to employ Park for a period of three years and to assist in securing an H1B visa for her was a contract, or a would-be contract.

110.    Park's complaints about racial discrimination made to Stake and to the ODEA were protected activities under 42 U.S.C. § 1981.

111.    Secolsky's interference with the processing of Park's visa application constituted retaliatory discharge.

112.    Secolsky's failure to hire Park as promised constituted retaliatory discharge.

113.    Secolsky's retaliatory discharge was motivated, at least in part, by Park's complaint about racial discrimination.

114.    Secolsky's retaliatory discharge was committed with deliberate oppression and with wanton disregard of the rights of Park, because without employment and a work visa, Park would be unable to remain and work legally in the United States

115.    42 U.S.C. §1981 allows Park a private right of action against Secolsky for damages. 42 U.S.C. §1981a(b) and 42 U.S.C. §1988 identify damages, punitive damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1981.

116.     Secolsky's retaliation against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY, to award her compensatory damages of $1,000,000.00, punitive damages of $5,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

### COUNT VIII.
### Intentional Infliction of Emotional Distress
### (Park v. Secolsky)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count VIII against the Defendant CHARLES SECOLSKY as follows:

117.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

118.     After January 2014, Secolsky committed the following extreme and outrageous acts against Park:

a.    Secolsky committed numerous hate crimes against Park, as alleged in Count III.

b.    Secolsky retaliated against Park by deleting her name as coauthor of a scholarly paper, depriving Park of recognition for her academic contributions.

c.    Secolsky retaliated against Park by reneging on his promise to assist Park in obtaining an H1B visa and permanent visa.

119.     Secolsky's acts were done willfully, maliciously, outrageously, deliberately and purposefully with intention and the result was the infliction of severe emotional distress upon Park.

120.    Secolsky's acts were carried out with reckless disregard of and indifference to the high probability of causing Park severe emotional distress.

121.    Secolsky's acts did, in fact, result in severe emotional distress to Hye-Young Park.

122.    Secolsky's misconduct shocks the conscience.

123.    As a direct and proximate result of Secolsky's acts, Park was caused to suffer severe bodily injury and extreme emotional distress, including: fright, anguish, shock, nervousness, anxiety, feelings of guilt, sleeplessness, nightmares, depression, loss of trust, inability to concentrate, difficulty studying, loss of appetite, headaches and stomach aches, all of which will continue into the future, as well as educational harm.

124.    The nature of suffering incurred by Park is ongoing, and will continue into the future.

125.    Park's extreme emotional distress required psychiatric and therapeutic treatment, and will continue to require psychiatric and therapeutic treatment into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

**COUNT IX.**
**Denial of Substantive Due Process, 42 U.S.C. § 1983**
**(Park v. Secolsky)**

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count IX against the Defendant CHARLES SECOLSKY as follows:

126.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

127.    The United States Code  states, in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  42 U.S.C. § 1983.

128.    At all times relevant to this complaint, Stake was cloaked with the authority of state law because:

    a.  The University of Illinois delegated to Secolsky the authority to supervise students, to teach classes, to co-author scholarly papers, and to submit funding proposals under the auspices of the University of Illinois.

    b.  Secolsky and Stake jointly taught classes at the University of Illinois to such an extent that Secolsky's actions were attributable to Stake and the University of Illinois.

    c.  The University of Illinois created the legal framework through which Secolsky was able to supervise students, teach classes, co-author scholarly papers, and submit funding proposals

    d.  Secolsky, through teaching, supervising students, co-authoring scholarly papers, and submitting funding proposals, was carrying out the traditional state functions of the University of Illinois.

    e.  Through the aforementioned actions, the University of Illinois created a special relationship with Secolsky.

129.    Secolsky's comments about Asian women and white men subjected Park to discrimination in her education based on race or national origin.

24

130.    Secolsky's sexual harassment of Park subjected her to discrimination in her education based on gender.

131.    Secolsky's racial discrimination, sexual discrimination, and sexual harassment of Park created a hostile work environment for Park.

132.    Secolsky's racial discrimination, sexual discrimination, and sexual harassment of Park were intentional.

133.     Secolsky's racial discrimination, sexual discrimination, and sexual harassment of Park deprived Park of her constitutional right to Equal Protection under the Fourteenth Amendment.

134.    42 U.S.C. §1983 allows Park a private right of action against Secolsky. 42 U.S.C. §1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1983.

135.    Secolsky's denial of Park's Fourteenth Amendment right to Equal Protection caused Park to suffer bodily harm, severe emotional distress and educational harm, all injuries of which have continued to the present date and will continue for decades into the future.

WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant CHARLES SECOLSKY, to award her compensatory damages of $1,000,000.00, punitive damages of $5,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

## COUNT X.
## Assault
## (Park v. Stake)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count X against the Defendant ROBERT STAKE as follows:

136.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

137.    Prior to October, 2014 Stake made numerous attempts to kiss Park.

138.    Stake's conduct placed Park in reasonable apprehension of receiving a battery.

139.    Stake intended that his conduct place Park in reasonable apprehension of receiving a battery.

140.    Stake's conduct was without lawful authority.

141.    Then and there Stake was guilty of having committed assaults against Park.

142.    Stake's assaults of Park:

   a.   were done with deliberate oppression;

   b.   were done with complete disregard for and total indifference to the safety and well-being of Park; and,

   c.   were part of a pattern of ongoing and escalating misconduct.

143.    Stake's assaults against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant ROBERT STAKE in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive

26

damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT XI.
## Battery
## (Park v. Stake)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XI against the Defendant ROBERT STAKE as follows:

144.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

145.    When Stake kissed Park on the lips on October 14, 2014, he did so:

    a.  with intent to make physical contact of an insulting or provoking nature with Park;

    b.  without legal justification; and,

    c.  without Park's consent.

146.    Then and there Stake was guilty of having committed a battery against Park.

147.    Stake's battery of Park:

    a.  was done with deliberate violence and oppression;

    b.  was done with complete disregard for and total indifference to the safety and well-being of Park; and,

    c.  was part of a pattern of ongoing and escalating misconduct.

148.    Stake's battery of Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant ROBERT STAKE in an amount

27

sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

**COUNT XII.**
**Illinois Hate Crime, 720 ILCS 5/12-7.1**
**(Park v. Stake)**

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XII against the Defendant ROBERT STAKE as follows:

149.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

150.    The Illinois Criminal Code states, in pertinent part:

> "A person commits a hate crime when, by virtue of the actual or perceived … gender ... or national origin of another individual … regardless of the existence of any other motivating factor or factors, he commits assault, [or] battery[.]"   720 ILCS 5/12-7.1(a).

151.    Stake's assaults and battery against Park, as alleged in Counts X and XI above,  were hate crimes in that:

    a.  They were motivated in whole or in part by Park's gender; and,

    b.  They were motivated in whole or in part by Park's national origin.

152.    720 ILCS 5/12-7.1 allows Park a private right of action against Stake for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

153.    Stake's hate crimes against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant ROBERT STAKE in an amount

sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

**COUNT XIII.**
**Gender-Related Violence, 740 ILCS 82/ *et seq.***
**(Park v. Stake)**

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XIII against the Defendant ROBERT STAKE as follows:

154.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

155.    The Gender Violence Act states, in pertinent part:

"'[G]ender-related violence', which is a form of sex discrimination, means the following:
    (1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.
 …
    (3) A threat of an act described in item (1) … causing a realistic apprehension that the originator of the threat will commit the act."
                                                    740 ILCS 82/5

156.    Stake's assaults and battery against Park, as alleged in Counts X and XI above, constitute gender-related violence in that they were motivated in whole or in part by Park's sex.

157.    740 ILCS 82/10 allows Park a private right of action against Stake for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

158.    Stake's acts of gender-related violence against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant ROBERT STAKE in an amount sufficient to compensate her for her damages in excess of $50,000.00; to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

**COUNT XIV.**
**Discrimination/Hostile Educational Environment, Title IX**
**(Park v. University of Illinois)**

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XIV against the Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS as follows:

159.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

160.    At all times relevant to this complaint, Stake, Hudson and Johnson were agents or representatives of the University of Illinois.

161.    As agents of the University of Illinois:

    a.  Stake exercised supervisory control over Secolsky;

    b.  Hudson exercised supervisory control over Secolsky; and,

    c.  Johnson exercised supervisory control over Secolsky.

162.    As agents of the University of Illinois:

    a.  Stake had the authority to discipline Secolsky and to terminate his affiliation with UIUC;

    b.  Hudson had the authority to discipline Secolsky and to terminate his affiliation with UIUC; and,

    c.   Johnson had the authority to discipline Secolsky and to terminate his affiliation with UIUC.

163.    On June 21, 2014, the University of Illinois, through Stake, acquired actual knowledge of Secolsky's misconduct.

164.    On or before July 1, 2014, the University of Illinois, through Hudson, acquired actual knowledge of Secolsky's misconduct.

165.    Between July 1, 2014 and October 26, 2014, the University of Illinois, through Hudson, Johnson, Associate Chancellor Menah Pratt-Clarke, Chancellor Phyllis Wise, and Associate Chancellor Reginald Alston, acquired actual knowledge of Secolsky's misconduct.

166.    At all relevant times, Park was subject to discrimination in her education based on gender in that she suffered sexual harassment by Secolsky.

167.    Secolsky's sexual discrimination and sexual harassment of Park created a hostile educational environment.

168.    Secolsky's sexual discrimination and sexual harassment of Park was so egregious that it shocks the conscience.

169.    Stake was deliberately indifferent to the rights and safety of Park in that he:

    a.   failed to take any corrective action regarding Secolsky's misconduct;

    b.   failed to prevent Secolsky from further harassing Park; and,

    c.   turned a blind eye to Secolsky's misconduct toward Park.

170.    Hudson was deliberately indifferent to the rights and safety of Park in that she:

    a.   failed to take any corrective action regarding Secolsky's misconduct;

    b.   failed to prevent Secolsky from further harassing Park; and,

    c.   turned a blind eye to Secolsky's misconduct toward Park.

171.    Johnson was deliberately indifferent to the rights and safety of Park in that she:

    a.   failed to take any corrective action regarding Secolsky's misconduct;

    b.   failed to prevent Secolsky from further harassing Park; and,

    c.   turned a blind eye to Secolsky's misconduct toward Park.

172.    Title IX provides that

    "No person... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"
                             20 U.S.C. § 1681(a)

173.    Since June 21, 2014, the University of Illinois has possessed actual notice that it could be liable under Title IX for Secolsky's sexual discrimination and sexual harassment.

174.    The University of Illinois failed to comply with Title IX in that one of its officials with authority to take corrective action regarding Secolsky's misconduct had actual knowledge of Secolsky's misconduct, and was deliberately indifferent to it.

175.    As a direct and proximate result of the University of Illinois's deliberate indifference to Secolsky's sexual discrimination and sexual harassment against Park, Park was caused to suffer severe bodily injury and extreme emotional distress, including: fright, anguish, shock, nervousness, anxiety, feelings of guilt, sleeplessness, nightmares, depression, loss of trust, inability to concentrate, difficulty studying, loss of appetite, headaches and stomach aches, all of which will continue into the future, as well as educational harm.

176.    The nature of suffering incurred by Park is ongoing, and will continue into the future.

177.    Park's extreme emotional distress required psychiatric and therapeutic treatment, and will continue to require psychiatric and therapeutic treatment into the future.

    WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant BOARD OF TRUSTEES OF THE UNIVERSITY

OF ILLINOIS, to award her compensatory damages of $1,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

## COUNT XV.
## Denial of Substantive Due Process, 42 U.S.C. § 1983
## (Park v. Stake, Hudson, and Johnson)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XV against the Defendants ROBERT STAKE, MICHAL T. HUDSON, and HEIDI JOHNSON as follows:

178.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

179.    The United States Code  states, in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  42 U.S.C. § 1983.

180.    Secolsky's misconduct included:

    a.  racial discrimination;

    b.  sexual discrimination;

    c.  sexual harassment; and,

    d.  creation of hostile work and educational environments.

181.    Secolsky's misconduct deprived Park of her constitutional right to Equal Protection under the Fourteenth Amendment.

182.    At all times relevant to this complaint, Stake, Hudson and Johnson were agents or representatives of the University of Illinois.

183.    At all times relevant to this complaint, Stake, Hudson and Johnson were acting under color of state law.

184.    As agents of the University of Illinois:

    a.   Stake exercised substantial control over Secolsky;

    b.   Hudson exercised substantial control over Secolsky; and,

    c.   Johnson exercised substantial control over Secolsky.

185.    As agents of the University of Illinois:

    a.   Stake had the supervisory authority to discipline Secolsky and to terminate his affiliation with UIUC;

    b.   Hudson had the supervisory authority to discipline Secolsky and to terminate his affiliation with UIUC; and,

    c.   Johnson had the supervisory authority to discipline Secolsky and to terminate his affiliation with UIUC.

186.    On June 21, 2014, Stake acquired actual knowledge of Secolsky's misconduct.

187.    On or before July 1, 2014, Hudson acquired actual knowledge of Secolsky's misconduct.

188.    Between July 1, 2014 and October 26, 2014, Johnson acquired actual knowledge of Secolsky's misconduct.

189.    Stake was personally involved in Secolsky's unconstitutional conduct because he was deliberately indifferent to the rights and safety of Park in that he:

    a.   failed to take any corrective action regarding Secolsky's unconstitutional conduct;

    b.   failed to prevent Secolsky from further harassing Park; and,

    c.   turned a blind eye to Secolsky's unconstitutional conduct toward Park.

190.    Hudson was personally involved in Secolsky's unconstitutional conduct because she was deliberately indifferent to the rights and safety of Park in that she:

      a.  failed to take any corrective action regarding Secolsky's unconstitutional conduct;

      b.  failed to prevent Secolsky from further harassing Park; and,

      c.  turned a blind eye to Secolsky's unconstitutional conduct toward Park.

191.    Johnson was personally involved in Secolsky's unconstitutional conduct because she was deliberately indifferent to the rights and safety of Park in that she:

      a.  failed to take any corrective action regarding Secolsky's unconstitutional conduct;

      b.  failed to prevent Secolsky from further harassing Park; and,

      c.  turned a blind eye to Secolsky's unconstitutional conduct toward Park.

192.    The deliberate indifference of Stake, Hudson, and Johnson to Secolsky's known unconstitutional conduct deprived Park of her constitutional right to Equal Protection under the Fourteenth Amendment.

193.    42 U.S.C. §1983 allows Park a private right of action against Stake, Hudson and Johnson for their violations of Park's Fourteenth Amendment constitutional rights. 42 U.S.C. §1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1983.

194.    As a direct and proximate result of the deliberate indifference of Stake, Hudson and Johnson to Secolsky's unconstitutional conduct, that unconstitutional conduct continued, and Park was caused to suffer severe bodily injury and extreme emotional distress, including: fright, anguish, shock, nervousness, anxiety, feelings of guilt, sleeplessness, nightmares, depression, loss of trust, inability to concentrate, difficulty studying, loss of appetite, headaches and stomach aches, all of which will continue into the future, as well as educational harm.

195.    The nature of suffering incurred by Park is ongoing, and will continue into the future.

196.    Park's extreme emotional distress required psychiatric and therapeutic treatment, and will continue to require psychiatric and therapeutic treatment into the future.

WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendants ROBERT STAKE, MICHAL T. HUDSON, and HEIDI JOHNSON, to award her compensatory damages of $1,000,000.00, punitive damages of $5,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

## COUNT XVI.
## Denial of Substantive Due Process, 42 U.S.C. § 1983
## (Park v. University of Illinois)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XVI against the Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS as follows:

197.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

198.    As alleged in Count XV, Hudson and Johnson were deliberately indifferent to Secolsky's known misconduct, and thereby deprived Park of her constitutional right to Equal Protection under the Fourteenth Amendment.

199.    As Director of the ODEA, Johnson was a University of Illinois official responsible for establishing policies for investigating and dealing with the sort of constitutional deprivation suffered by Park.

200.    As Senior Title IX and ADA Specialist, Hudson was a University of Illinois official responsible for establishing policies for investigating and dealing with the sort of constitutional deprivation suffered by Park.

201.    Both Hudson and Johnson repeatedly told Park that the ODEA could not address her complaints because Secolsky had no direct employment or affiliation with the University of Illinois.

202.    Hudson repeatedly told Park that the ODEA could not address her complaints because Park had no direct employment or affiliation with the University of Illinois.

203.    Johnson ratified Hudson's statements by repeating them, and by not refuting them.

204.    Associate Chancellor Reginald Alston, in his meeting with Park, ratified Hudson's statements by repeating them and by not refuting them.

205.    Through Hudson, Johnson, and Alston, the University of Illinois officially endorsed a policy or custom that misconduct such as that engaged in by Secolsky would not be dealt with because the respondent, Secolsky, was neither employed by nor directly affiliated with the University of Illinois.

206.    Through Hudson, Johnson, and Alston, the University of Illinois officially endorsed a policy or custom that misconduct such as that engaged in by Secolsky would not be dealt with because the complainant, Park, was neither employed by nor directly affiliated with the University of Illinois.

207.    Said policies allowed Secolsky to continue his racial discrimination, sexual discrimination, and sexual harassment against Park, causing further deprivation of Park's constitutional right to Equal Protection under the Fourteenth Amendment.

208.    Hudson and Johnson asserted that they were powerless to deal with complaints of racial discrimination, sexual discrimination, and sexual harassment when either the complainant or the respondent was not employed by or affiliated with the University of Illinois.  Those assertions are plainly incorrect, and belie a fundamental misunderstanding of the requirements and scope of state and federal law, including Title IX.

209.    The misunderstandings of Hudson and Johnson are a result of a failure by the University of Illinois to provide adequate training or supervision to policy-makers and their subordinates to such an extent that it amounts to deliberate indifference to the rights of those, such as Park, who are participants in programs and activities sponsored by University of Illinois.

210.    42 U.S.C. §1983 allows Park a private right of action against the University of Illinois. 42 U.S.C. §1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1983.

211.    As a direct and proximate result of the deliberate indifference of the University of Illinois to Secolsky's unconstitutional conduct, that unconstitutional conduct continued, and Park suffered bodily harm, severe emotional distress and educational harm, all injuries of which have continued to the present date and will continue for decades into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, to award her compensatory damages of $1,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

## COUNT XVII.
## Retaliation, 775 ILCS 5 *et seq.*
## (Park v. Hudson and Johnson)

Plaintiff, Hye-Young Park, by and through her attorney pleads this Count XVII against the Defendants MICHAL T. HUDSON and, HEIDI JOHNSON as follows:

212.   Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

213.   The Illinois Human Rights Act states, in pertinent part:

> "It is a civil rights violation for a person … to … [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, because he or she has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act[.]"
> 775 ILCS 5/6-101(A).

214.   Secolsky's misconduct included:

a.   racial discrimination;

b.   sexual discrimination;

c.   sexual harassment; and,

d.   creation of a hostile work environment.

215.   Shortly following Park's complaints to the ODEA about Secolsky's misconduct, Hudson learned from Juli Misa that Park was, indeed, a participant in a University of Illinois program under the sponsorship of Professor Nancy Abelmann.

216.   The very next day following Juli Misa's email to Hudson, Professor Abelmann abruptly terminated her sponsorship of Park's F1 OPT training.

217.    The suspicious timing of Professor Abelmann's termination of Park's training raises a strong presumption that the termination was orchestrated by the ODEA, and particularly by Hudson and Johnson.

218.    The orchestration of Park's termination by Hudson and Johnson was done in retaliation for Park's complaints.

219.    775 ILCS 5/10-102 allows Park a private right of action against Hudson and Johnson for actual damages, including damages for emotional distress, or punitive damages, plus attorney's fees and costs.

220.    The retaliation against Park by Hudson and Johnson caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendants MICHAL T. HUDSON and, HEIDI JOHNSON for compensatory damages in excess of $50,000.00, to award her punitive damages, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

### COUNT XVIII.
### Retaliation, 42 U.S.C. § 1981
### (Park v. Hudson and Johnson)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XVIII against the Defendants MICHAL T. HUDSON and HEIDI JOHNSON as follows:

221.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

222.    The United States Code states, in pertinent part,

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ...,

and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981.

223.    Park's participation in the OPT program sponsored by the University of Illinois was a contract, or would-be contract.

224.    Park's complaints about racial discrimination to Stake and to the ODEA were protected activities under 42 U.S.C. § 1981.

225.    Professor Abelmann's sudden dropping of her sponsorship of Park's OPT studies occurred just one day after Hudson learned that the OPT program was, indeed, an employment program.

226.    The suspicious timing of Park's complaints to the ODEA followed by Park's dismissal from the OPT program gives rise to a presumption that personnel at the ODEA, and particularly Hudson and Johnson, orchestrated the dismissal.

227.    The sudden dropping of Park from the OPT program constituted an impairment of Park's contract under color of state law, in violation of 42 U.S.C. §1981(c).

228.    The retaliation against Park was motivated, at least in part, by Park's complaint about racial discrimination.

229.    The retaliatory discharge committed by Hudson and Johnson was done with malice or reckless indifference to the federally protected rights of Park, because:

   a.    without participation in the OPT program, Park would be unable to remain and work legally in the United States; and,

   b.    Hudson and Johnson, having been trained in the administration of Title IX and other federal laws, knew that their actions might be in violation of federal law.

230.    42 U.S.C. §1983 allows Park a private right of action against Hudson and Johnson for their violation of Park's rights secured by 42 U.S.C. §1981.  42 U.S.C. §1981a(b) and 42 U.S.C. §1988 identify damages, punitive damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1981.

231.    The retaliation committed by Hudson and Johnson against Park caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully prays this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendants MICHAL T. HUDSON and HEIDI JOHNSON, to award her compensatory damages of $1,000,000.00, punitive damages of $5,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as the Court may deem just and proper.

### COUNT XIX.
### Retaliation, 42 U.S.C. § 1981
### (Park v. University of Illinois)

Plaintiff, HYE-YOUNG PARK, by and through her attorney pleads this Count XIX against the Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS as follows:

232.    Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

233.    Plaintiff incorporates by reference paragraphs 222 through 229 and all sub-parts of Count XVIII (42 U.S.C. §1981 retaliation by Hudson and Johnson) previously stated herein.

234.     Hudson and Johnson, through their actions, established that it was the policy or custom of the University of Illinois to permit retaliation for complaints such as those made by Park.

235.     The policy and custom of the University of Illinois allowed the retaliation suffered by Park.

236.     The retaliation suffered by Park constituted an impairment of Park's contract under color of state law, in violation of 42 U.S.C. §1981(c).

237.     42 U.S.C. §1983 allows Park a private right of action against the University of Illinois for its violation of Park's rights secured by 42 U.S.C. §1981.  42 U.S.C. §1981a(b) and 42 U.S.C. §1988 identify damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 U.S.C. §1981.

238.     The retaliation against Park by the University of Illinois caused Park to suffer ongoing injury and severe emotional distress and educational harm that will continue into the future.

WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, to award her compensatory damages of $1,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

### COUNT XX.
### Retaliation, Title IX
### (Park v. University of Illinois)

Plaintiff, Hye-Young Park, by and through her attorney pleads this Count IX against the Defendant Board of Trustees of the University of Illinois as follows:

239.     Plaintiff incorporates by reference paragraphs 1 through 66 and all sub-parts previously stated herein.

240.     At all times relevant to this complaint, Hudson and Johnson were agents or representatives of the University of Illinois.

241.     Title IX regulations (incorporating Title VI regulations) state, in pertinent part:

> (e) Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subpart.  28 C.F.R. § 42.107(e).

242.     The University of Illinois failed to comply with Title IX in that one of its officials retaliated against Park for her protected activity, as alleged in Count XVII and Count XVIII.

243.     By reason of the University of Illinois's retaliation, Park suffered severe emotional distress and educational harm, all injuries of which have continued to the present date and will continue for decades into the future.

WHEREFORE, Plaintiff respectfully pray this Court enter Judgment in favor of Plaintiff, HYE-YOUNG PARK, and against Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, to award her compensatory damages of $1,000,000.00, attorney fees, and the costs of this action; and to grant such other relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by a jury of twelve.

Dated:  June 23, 2015                              Respectfully submitted,

                                                             HYE-YOUNG PARK

                                        By:     s/ Marshall Dennis Mickunas_____
                                                     Plaintiff's Attorney

M. Dennis Mickunas
Illinois Bar # 6293386
301 West Green Street
Urbana, IL 61801
Phone: 217-328-4000
Fax: 217-328-6765
dennis@mickunas-law.com