```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF ILLINOIS

HYE-YOUNG PARK,
                                        Docket No. 15-2136
           Plaintiff,

   vs.                                  Urbana, Illinois
                                        August 24, 2018
                                        3:34 p.m.
CHARLES SECOLSKY and
ROBERT STAKE,

           Defendants.


              CLOSING ARGUMENT BY MR. BRINKMANN

          BEFORE THE HONORABLE COLIN S. BRUCE
              UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:     MARSHALL DENNIS MICKUNAS, ESQUIRE
                       Mickunas Law Office
                       312 Yankee Ridge Lane
                       Urbana, Illinois 61802
                       217-328-4000

Pro Se Defendant:      CHARLES SECOLSKY
                       126 Rolling Meadows Road
                       Middletown, New York 10940
                       973-489-6472

For Defendant Stake:   WILLIAM J. BRINKMANN, ESQUIRE
                       NATHAN T. KOLB, ESQUIRE
                       Thomas Mamer & Haughey LLP
                       30 East Main Street, Suite 500
                       P.O. Box 560
                       Champaign, Illinois 61824
                       217-351-1500
```

Proceedings recorded by mechanical stenography; transcript produced by computer.

1  (In open court; jury present; 3:44 p.m.)

2  MR. BRINKMANN: Thank you, Your Honor. May it

3  please the Court.

4  THE COURT: It does.

5  MR. BRINKMANN: Counsel, Mr. Secolsky.

6  Ladies and gentlemen of the jury, it's been a

7  long day, and I'll try to be brief in my comments.

8  First of all, on behalf of Dr. Stake, I want to

9  thank you for your attention during this case. This

10 trial is the only opportunity that Dr. Stake has to

11 respond to the claims that have been made against him by

12 Lisa Park, and so your attention has been very important

13 to us.

14 Before I get into my prepared remarks, I want

15 to respond to a couple of things Mr. Mickunas said at the

16 end of his closing argument.

17 First, he said, "Who would make this up, a

18 story about forcing a tongue into her mouth?"

19 Well, the answer is Lisa Park. You remember

20 yesterday on the stand she talked about lying to her

21 doctor. She said that in order to get an STD test she

22 told her doctor that she had a new partner, but that was

23 a lie. It was untrue, and she did it just so she could

24 get this STD test.

25 And the reason she did it was because she said

1  her OB/GYN told her to say that so she could get the STD
2  test.  It's unlikely that a doctor would tell a patient
3  to lie to another doctor in the first place; but,
4  secondly, her OB/GYN could order an STD test herself.
5  She didn't need to send Lisa Park to a doctor and lie to
6  the other doctor to get an STD test.
7             Secondly, this thing about forcing his tongue
8  into her mouth is a claim that was made for the first
9  time in this litigation last November.  The suit was
10 filed in 2015, the original complaint.  In the amended
11 complaint, she said she was kissed on the lips.  In her
12 deposition, she said consistently she was kissed on the
13 lips.  When she talked to Ms. Hudson at ODEA, she said
14 she was kissed on the lips.  It wasn't until the motions
15 for summary judgment were filed, last November -- or
16 October and then November when she was responding -- that
17 she put in the declaration that said that Dr. Stake
18 "forced his tongue into her mouth."
19            And why did she do that?  They realized that
20 they needed to show violence for their gender violence
21 claim here; and that's where, for the first time, this
22 purported violent act occurred.
23            Now, she has three claims against Dr. Stake:
24 battery, hate crime, and gender violence.  All of those
25 claims are based on the one kiss that happened at the

1  Kamakura restaurant.  All three of these claims require
2  that she prove that the kiss caused an injury to her and
3  that the injury was caused by Dr. Stake's kiss; she
4  suffered an injury caused by Dr. Stake's kiss.
5           As to all three of those claims, if you find
6  that she did not suffer an injury and it was not an
7  injury caused by Dr. Stake's kiss, your job is basically
8  done with regard to Dr. Stake.  If she does not prove her
9  injury, she loses on all three of her claims, so I'd like
10 to discuss this claim of injury she has.
11          The instruction you'll get from Judge Bruce
12 with respect to compensatory damages will reference the
13 fact that she -- compensatory damages are physical or
14 mental/emotional pain and suffering and disability and
15 loss of a normal life.  There is no dispute in this case
16 that she did not suffer a physical injury.  The only
17 claim she suffered -- put into evidence in this case is
18 emotional distress.  And she has characterized this as
19 "severe emotional distress."
20          So the question you would have to ask yourself
21 with respect to injuries is:  Has she proven her claim of
22 severe emotional distress?
23          I think two parts of the evidence you've heard
24 at trial are important.  First of all, the conduct of Ms.
25 Park before and after the kiss.  Does it show that she

1 had severe emotional distress caused by the kiss?  And,
2 second, the psychiatric records that we have heard about
3 during this trial.  And did those records reflect
4 evidence of an injury caused by Dr. Stake's kissing?
5         First of all, I think it is abundantly clear
6 that the behavior that Ms. Park had before and after the
7 kiss was the same.  She had a friendly, playful
8 relationship in her emails.  The very first message she
9 sent to Dr. Stake on October 20th, six days after the
10 kiss, the first sentence was, "I hope you're enjoying the
11 fragrance of autumn in Mexico," and then she went on to
12 ask him for a meeting.
13         Her behavior after the kiss did not show any
14 evidence that she was suffering severe emotional distress
15 caused by the kiss.  It was business as usual.  She
16 behaved exactly as you would expect someone to behave
17 over a kiss on the forehead that is no big deal, which is
18 exactly what it is.  It's a kiss on the forehead that is
19 no big deal.
20         She continued throughout October to call on Dr.
21 Stake to help her with her job applications to Michigan
22 and Purdue.  He helped her in November.  He helped her in
23 December.  In February, she asked if he would extend her
24 email, which he did.  She helped out with the Thai
25 student visits in April, and she testified that she did

1  that because she had respect for Dr. Stake, and she
2  wanted to support him.  She said that twice during this
3  trial.
4          That's not the behavior of a person who is
5  suffering severe emotional distress caused by the kiss in
6  the Kamakura restaurant.  It wasn't until June 21st when
7  Dr. Stake refused to get involved in her dispute with
8  Mr. Secolsky that she turned angry, and her behavior
9  changed after that.  And Dr. Stake, I suggest, very
10 wisely decided to stay out of it, to back off, and not
11 engage with Ms. Park.
12         If his kiss injured her and caused her
13 emotional distress, her behavior would have changed.  I
14 think that's common sense.  Medical records also do not
15 reflect evidence of an injury caused by Dr. Stake by this
16 kiss.
17         The very first time that she went to the doctor
18 to complain of anxiety and depression in 2014 is
19 reflected in Plaintiff's Exhibit 5A, Bates stamp
20 page 100.  And at the bottom of that record, Ms. Park
21 stated that she has "concerns over possible depression.
22 She states that her mother has a history of depression
23 and is currently being treated with medication.  The
24 patient has noted over the last six months, since her son
25 left to join the military, he returned to South Korea

1  with his father.  He's currently in the military.  He had
2  been living with her here in the States for the last
3  18 years.  States that during that time, in the last six
4  months, she has been feeling more down, feeling alone,
5  has some indecisiveness with her career."
6         She was attributing in March of 2014 her
7  anxiety and her problems to her son leaving to go to
8  Korea.  She wasn't attributing that to Dr. Stake in her
9  first visit.
10         She also mentions the Prozac from McKinley, and
11  we talked about her prior episode with depression and
12  anxiety that happened in 2004.
13         A subsequent visit to the doctor that occurred
14  in August of 2014, when she was having the chest
15  discomfort, is Plaintiff's Exhibit 5A, and it's Bates
16  stamped Number 87.  And in this exhibit, the plaintiff
17  talks about the, the onset of the symptoms; and the onset
18  of the symptoms was "January of this year after alleged
19  sexual harassment."
20         The Kamakura lunch was three years -- about
21  three months earlier.  She says the onset of her symptoms
22  were the sexual harassment in January.  Again, the
23  medical records do not support the notion that Dr. Stake
24  caused her severe emotional distress, that he caused her
25  any injury by this kiss.  Based on this, this evidence at

1 the trial, I would suggest to you that the plaintiff has
2 failed to carry her burden of proof that the kiss caused
3 an injury and that Dr. Stake was the proximate cause of
4 her injury.  Without proving that as to all three of the
5 claims against Dr. Stake, she cannot recover any damages
6 against him.
7           Now the three claims.  Battery.  A battery
8 under the law is intentionally touching someone without
9 their permission.  A pat on the back, greeting a friend
10 with a kiss on the cheek, forehead, or lips -- that's a
11 battery.  Here, Dr. Stake admits that he kissed Ms. Park.
12 He says he kissed her on the forehead; and, as you know,
13 she's claiming otherwise.  And so the Court has found
14 that he committed a battery.  It's found that he is
15 liable for battery if she can prove that she is entitled
16 to compensatory damages.
17           I don't think she has proven that she has an
18 injury and, therefore, is not entitled to compensatory
19 damages; and, therefore, even, even though a battery was
20 committed, she is not entitled to an award of any damages
21 for battery.
22           Ms. Park is claiming that the kiss was a hate
23 crime.  She's saying that he kissed her in part because
24 of her gender and national origin -- in English, that he
25 was motivated in part to kiss her because she was a

1  Korean female.

2       You have to look at the evidence.  Was there
3  any evidence that he was motivated to kiss her because of
4  her national origin and her gender?  The only evidence on
5  his motivation was the testimony by Dr. Stake that he
6  kissed her after a confrontational lunch to let her know
7  that they were still friends and to try to comfort her,
8  and nothing about her national origin, nothing about her
9  gender.

10      Mr. Mickunas presumes that anyone who kisses a
11 female who is of a different national origin, it
12 automatically means it was motivated by national origin
13 and gender.  There has to be evidence to support that.
14 And there -- the only evidence of his motive for kissing
15 was Dr. Stake's testimony.  There is no evidence to
16 support the claim that he kissed her because of her
17 national origin or her gender.

18      Lastly, he -- Ms. Park is claiming and she's
19 accusing Dr. Stake of gender violence, and this is a sex
20 discrimination statute.  She is claiming that the kiss,
21 being unauthorized, was violent.  It was an act of
22 violence or physical aggression, and it was committed on
23 the basis of her sex.  And she's required to prove that
24 she was injured, and Dr. Stake's acts were a proximate
25 cause of her injury.

1        Once again, this was a kiss in a public
2   restaurant.  It was not done violently.  There's no
3   evidence that Dr. Stake grabbed her.  She did not push
4   away.  He described it as a quick peck on the forehead.
5   The evidence does not support the notion that this was a
6   violent kiss.
7        The plaintiff claimed that the kiss was on the
8   lips in her complaint, her deposition.  She is contending
9   that it was a tongue in her mouth so that she can show
10  that it was violent.  But I think her conduct otherwise
11  in the complaint, in her meeting with Ms. Hudson, in her
12  deposition that it was "a kiss on the lips" shows
13  otherwise.  It -- she's claiming only a kiss on the lips.
14  We're claiming no kiss on the lips, and certainly no kiss
15  with a tongue.
16       Because the plaintiff has not proved injury,
17  all three counts she must -- she must fail on.  She has
18  not proven gender violence, and she has not proven gender
19  discrimination.
20       Now, Mr. Mickunas and Ms. Park are also seeking
21  punitive damages; and punitive damages are awarded first
22  of all only if, in the first place, you find compensatory
23  damages.  And as I've suggested to you, she is not
24  entitled to compensatory damages from Dr. Stake.  But
25  punitive damages can only be awarded if there is an

1  actual or deliberate intention to harm, which if not
2  intentional shows an utter indifference or conscious
3  disregard for the safety of others.
4           Here, once again, I don't believe the evidence
5  supports the notion that Dr. Stake acted with an actual
6  or deliberate intention to harm the plaintiff.  There is
7  no evidence to support compensatory or punitive damages
8  in this case.
9           Mr. Mickunas showed you the verdict forms that
10 he's asking you to follow.  I'm going to do the same
11 thing.  This is the counts directed against Dr. Stake.
12 Initially, it says that the Court has already found Dr.
13 Stake is liable for battery.  But that's not the end of
14 the question.  I'll get to that in a minute.
15          Secondly, you have to fill in -- check one.
16 Did the plaintiff prove her hate crime against Dr. Stake?
17 I would ask you to find in favor of Dr. Stake, and the
18 form in that manner.
19          Count 13, the gender related violence claim.
20 Once again, I don't believe the plaintiff has followed --
21 or satisfied her burden of proof, and so you should check
22 the box that references a finding in favor of the
23 defendant, Dr. Stake.
24          Now, under compensatory damages, this is where
25 the battery claim against Dr. Stake comes in.  The Court

1  has found that he's liable for Count 11, the battery.
2  You must still determine what amount, if any, of
3  compensatory damages the plaintiff is entitled on the
4  battery claim.  If you have found that Dr. Stake is
5  liable on any of the other counts, then you must
6  determine if Plaintiff -- if Plaintiff is entitled to
7  compensatory damages.
8           However, if you have found that the plaintiff
9  suffered no damages due to the battery and that Dr. Stake
10 is not liable on any other count, then you will not award
11 compensatory damages and may sign the verdict form.
12          You can find on the verdict form -- even though
13 he committed a battery, you can find on the verdict form
14 that she's entitled to zero compensatory damages, and
15 that's what we would ask you to do in this case.
16          Mr. Mickunas is going to have rebuttal argument
17 at this point, and I will not have an opportunity to
18 respond to what he says.  I would ask you, in your
19 deliberations, that you trust your own judgment, trust
20 your own memory of what the evidence was in this case,
21 and use common sense; and we will be waiting for your
22 verdict.
23          Thank you very much.
24              (Closing argument concludes, 4:03 p.m.)
25

REPORTER'S CERTIFICATE

I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated this 1st day of November, 2018.

_____s/Lisa Knight Cosimini_____
Lisa Knight Cosimini, RMR-CRR
Illinois License # 084-002998